# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

FARBOD YARMOHAMMADI ET AL.,

    Plaintiffs,

v.

MARCO RUBIO ET AL.,[1]

    Defendants.

\*

\*

\*

\*

\*

\*

\*

Civil No. 24-2952-BAH

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Pending before the Court is the motion to dismiss the amended complaint, drop misjoined parties, and sever claims (hereinafter "the Motion") filed by Defendants Marco Rubio, who replaced Antony Blinken as U.S. Secretary of State, and Robert Jachim, Acting Director of the State Department's Office of Screening, Analysis, and Coordination (collectively, "Defendants"). ECF 9. The plaintiffs still remaining in this case, including Farbod Yarmohammadi, Vesal Ahsani, Reza Eslamipoor, Farbod Khosro Anjom, Camellia Enjir Gholiankordi, and Padideh Naderi Asrami (collectively, "Plaintiffs"), have opposed the Motion, ECF 17, and Defendants replied, ECF 21. Both the Motion and opposition include memoranda of law, and the opposition and reply

---

[1] As a result of the change in administration during the pendency of this action, the current Secretary of State is automatically substituted as a party to this action. *See* Fed. R. Civ. P. 25(d). The Clerk is directed to amend the docket to reflect that the first named defendant, the Secretary of State, is now Marco Rubio, in place of Antony Blinken. It is not immediately clear whether Robert Jachim remains the Acting Director of the State Department's Office of Screening, Analysis, and Coordination and will therefore remain as the named defendant on the docket unless and until the parties inform that Court that substitution is appropriate. *See* Fed. R. Civ. P. 25(d) ("[A]ny misnomer not affecting the parties' substantial rights must be disregarded. The court may order substitution at any time, but the absence of such an order does not affect the substitution.").

include exhibits.[2]  The Court has reviewed all relevant filings and finds that no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2025).  Accordingly, for the reasons stated below, the Motion is **GRANTED IN PART AND DENIED IN PART**.

## I.   BACKGROUND[3]

Plaintiffs are Iranian nationals seeking immigrant visas to the United States.  ECF 5, at 14–21 ¶¶ 43–90.  Each is pursuing employment-based immigration in visa category EB2-NIW.[4] *See id.* at 14 ¶ 43, at 16 ¶ 60, at 18 ¶ 68, at 19 ¶ 75, at 20 ¶ 83.  Each Plaintiff filed an I-140, which was approved by USCIS, filed a DS-260 (Immigrant Visa Electronic Application) with the National Visa Center (NVC), and had an interview at a United States embassy or consulate abroad. *See id.* at 14–21 ¶¶ 43–90.  After each Plaintiff's consular interview, the consular officer issued a non-final 221(g) refusal[5] and requested additional information via a DS-5535 supplemental form.

---

[2] Unless otherwise noted, the Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

[3] The facts described herein are taken from the amended complaint. ECF 5.

[4] Plaintiff Gholiankordi is a derivative spouse on Anjom's self-petition. *See* ECF 5, at 19 ¶ 79.

[5] The State Department's website explains that a section 221(g) notice means the following:

> A visa refusal under section 221(g) of the Immigration and Nationality Act (INA) means the applicant did not establish eligibility for a visa to the satisfaction of the consular officer, as is required under U.S. law, specifically section 291 of the INA. When an applicant is refused under 221(g), it means the consular officer determined that the applicant was not eligible for a visa after completing and executing the visa application and any required interview. It is possible that a consular officer will reconsider a visa application refused under 221(g) at a later date, based on additional information or upon the resolution of administrative processing, and determine that the applicant is eligible. When a consular officer refuses a case under 221(g), she or he will convey to the applicant whether the applicant is required to provide any further documentation or information, or whether the case requires additional administrative processing.

*Id.* Although each Plaintiff submitted the information requested via the DS-5535, they remain in administrative processing.[6] *Id.* Plaintiff Yarmohammadi has been in administrative processing since June 8, 2023, *see id.* at 14–15 ¶ 47, Plaintiff Ahsani since September 20, 2023, *see id.* at 17 ¶ 66, Plaintiff Eslamipoor since October 5, 2023, *see id.* at 18–19 ¶ 72, Plaintiffs Anjom and Gholiankordi since November 3, 2023, *see id.* at 20 ¶ 80, and Plaintiff Asrami since December 24, 2023, *see id.* at 21 ¶ 87.[7]

---

U.S. Department of State, Bureau of Consular Affairs, *Administrative Processing Information*, https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html [perma.cc/T5L5-DBRW] (last visited June 25, 2025).

[6] The State Department's website provides the following information regarding administrative processing:

> There are only two possible outcomes for complete and executed U.S. visa applications (absent a visa sanction against a country under Section 243(d) of the Immigration and Nationality Act). The consular officer will either issue or refuse the visa. If a visa applicant has not established that he or she is eligible for a visa, the consular officer must refuse that application. However, in accordance with Department procedures, a consular officer may determine that additional information from sources other than the applicant may help establish an applicant's eligibility for a visa. In such cases, refused visa applications warrant further administrative processing. Upon completion of the case-specific administrative processing, the consular officer might conclude that an applicant is now qualified for the visa for which he or she applied. Alternatively, the officer may conclude that the applicant remains ineligible for a visa. When administrative processing is required, the consular officer will inform the applicant at the end of the interview. The duration of the administrative processing will vary based on the individual circumstances of each case. Visa applicants are reminded to apply early for their visas, well in advance of the anticipated travel date.

U.S. Department of State, Bureau of Consular Affairs, *Administrative Processing Information*, https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/administrative-processing-information.html [perma.cc/T5L5-DBRW] (last visited June 25, 2025).

[7] "Courts measure the length of the delay 'from the last Government action to the issuance of the opinion.'" *Adan v. Blinken*, No. CV 24-591 (JDB), 2024 WL 5168521, at *4 (D.D.C. Dec. 19, 2024) (quoting *Meyou v. U.S. Dep't of State*, Civ. A. No. 21-2806 (JDB), 2022 WL 1556344, at *3 (D.D.C. May 17, 2022)); *see also Sheikhalizadehjahed v. Gaudiosi*, No. 2:24-CV-1136 SCR, 2024 WL 4505648, at *9 n.8 (E.D. Cal. Oct. 16, 2024).

Plaintiffs filed the operative amended complaint on October 29, 2024. ECF 5. The amended complaint alleges six counts: (1) a challenge to the DS-5535 scheme (specially, Plaintiffs challenge the timing of the issuance of DS-5535 forms which are issued after an interview) under Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A) and (D) (count one), *id.* at 36–37 ¶¶ 189–94; (2) an APA challenge under § 706(2)(A) and (D) to "Defendants' decision to use § 221(g) to throttle legal immigration" (count two), *id.* at 37 ¶¶ 195–97; (3) an APA challenge under § 706(2) for unlawful withholding of adjudication of Plaintiffs' immigrant visa applications (count three), *id.* at 37–38 ¶¶ 198–209; (4) an APA challenge under § 706(1) for unlawful withholding of a mandatory entitlement owed to Plaintiffs (count four), *id.* at 39–40 ¶¶ 210–19; (5) an APA challenge under § 555(b) for unreasonable delay (count five), *id.* at 40–41 ¶¶ 220–30; and (6) mandamus relief pursuant to 28 U.S.C. § 1361 for the willful and unreasonable failure to adjudicate the immigrant visa petitions (count six), *id.* at 41–43 ¶¶ 231–40.

Defendants filed the Motion on December 16, 2024, which, as noted, is fully ripe for the Court's review. *See* ECFs 9, 17, 21. On December 21, 2024, Plaintiffs filed a motion for preliminary injunction. ECF 11. After it was fully ripe, the Court held a hearing on the preliminary injunction motion on January 15, 2025. *See* ECF 24. On January 17, 2025, the Court issued a preliminary injunction as to Plaintiffs Kaveh Teymournejad and Zahra Farasat and denied the motion for a preliminary injunction as to Plaintiffs Yarmohammadi, Ahsani, Eslamipoor, Anjom, Gholiankordi, and Asrami. *See* ECF 30. Subsequently, Plaintiffs Teymournejad and Farasat voluntarily dismissed their claims.[8] *See* ECF 32. The Motion remains pending and is ripe as to Plaintiffs Yarmohammadi, Ahsani, Eslamipoor, Anjom, Gholiankordi, and Asrami.

---

[8] Other Plaintiffs had previously voluntarily dismissed their claims. *See* ECFs 7 and 12.

## II.   DISCUSSION

Defendants argue that dismissal is proper under Rules 12(b)(1) for lack of subject matter jurisdiction, 12(b)(3) for lack of venue, and 12(b)(6) for failure to state a claim. *See generally* ECF 9. Specifically, Defendants argue that Plaintiffs lack standing to bring count one, which challenges the timing of the DS-5535 collection. *See id.* at 9–10. Alternatively, Defendants argue that Plaintiffs cannot succeed on this claim under Rule 12(b)(6) because the timing of the DS-5535 request is within the Secretary of State's congressionally delegated discretion, that the collection scheme does not violate the Immigration and Nationality Act ("INA"), and it is not arbitrary and capricious. *See id.* at 10–19. As to count two, Plaintiffs' "illegal throttling" challenge, Defendants argue that this claim fails under Rule 12(b)(6) as Plaintiffs have not alleged a final agency action. *Id.* at 19–20.

Defendants further contend that dismissal for improper venue under Rule 12(b)(3) is warranted because the remaining six Plaintiffs have no connection to the District of Maryland and all reside abroad. *See id.* at 20–22. On this point, Defendants argue that dismissal, rather than transfer, is warranted, and that the Court should sever the claims of the remaining Plaintiffs.[9] *Id.* at 22–26. As to Plaintiffs' unlawful withholding and unreasonable delay claims, counts three through six, Defendants advance that dismissal is warranted under Rule 12(b)(1) for lack of subject matter jurisdiction as Plaintiffs have named the wrong defendants, *id.* at 26–27, and because Defendants have already undertaken the only mandatory, nondiscretionary duty required by issuing the § 221(g) refusals to each Plaintiff, *id.* at 27–30. Finally, under Rule 12(b)(6),

---

[9] Defendants also asked that the now six remaining Plaintiffs' claims be dropped as misjoined. *See* ECF 9, at 23–26. As the Maryland-connected Plaintiffs have voluntarily dismissed their claims, the request to "drop" the non-Maryland Plaintiffs from this suit is moot.

Defendants argue that the doctrine of consular nonreviewability precludes judicial review of the unlawful withholding and unreasonable delay claims.[10] *Id.* at 30–31.

In opposition, Plaintiffs assert that they have standing, that their injuries are traceable to Defendants, that venue is proper in this District, that their claims are properly joined, that they have not yet received a final decision on their visa applications and a yet outstanding mandatory, nondiscretionary duty is still owed to them, that their unlawful withholding and unreasonable delay claims are justiciable, and that consular nonreviewability does not preclude review.[11] *See* ECF 17, at 11–27.

### A.    Legal Standards

####    1.    Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss a complaint for a lack of subject matter jurisdiction. "Rule 12(b)(1) governs motions to dismiss for mootness and for lack of standing, which pertain to subject matter jurisdiction." *Stone v. Trump*, 400 F. Supp. 3d 317, 333 (D. Md. 2019); *see also Pruitt v. Resurgent Cap. Servs., LP*, 610 F. Supp. 3d 775, 779 (D. Md. 2022) (explaining that motions to dismiss for lack of standing are considered under Rule 12(b)(1)). "Motions to dismiss for lack of subject matter jurisdiction are properly granted where a

---

[10] In granting the motion for a preliminary injunction as to Plaintiffs Teymournejad and Farasat, the Court previously rejected the arguments that Plaintiffs named the wrong defendants, that issuing a § 221(g) refusal constitutes the only mandatory, nondiscretionary duty, and that the doctrine of consular nonreviewability precludes judicial review. *See* ECF 24 (minutes of preliminary injunction hearing held Jan. 15, 2025); ECF 34 (transcript of continued preliminary injunction hearing on Jan. 17, 2025), at 18:20–19:19 (referring to discussion of consular nonreviewability at earlier preliminary injunction hearing and reiterating finding that it did not preclude review of Plaintiffs Teymournejad and Farasat's claims).

[11] Plaintiffs also argue that the Court should not resolve unreasonable delay claims on a motion to dismiss, and, even if it does, the delays alleged are unreasonable. *See* ECF 17, at 27–34. However, Defendants have not moved to dismiss the unreasonable delay claims on the merits. *See generally* ECF 9.

claim fails to allege facts upon which the court may base jurisdiction." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005) (citing *Crosten v. Kamauf*, 932 F. Supp. 676, 679 (D. Md. 1996)).

Whether a plaintiff has standing to sue is a threshold inquiry for any lawsuit. *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 597 (2007). "As the party seeking to invoke federal jurisdiction, Plaintiff[] bear[s] the burden of establishing standing." *In re Gerber Prod. Co. Heavy Metals Baby Food Litig.*, Civ. No. 121-269(MSN)(JFA), 2022 WL 10197651, at *4 (E.D. Va. Oct. 17, 2022) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To establish standing, a plaintiff must demonstrate that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

### 2.    Rule 12(b)(3)

Federal Rule of Civil Procedure 12(b)(3) allows a party to move to dismiss a complaint for improper venue. "In the Fourth Circuit, when a challenge to venue is raised, the plaintiff bears the burden of demonstrating that venue is appropriate." *Stone v. Wells Fargo Bank, N.A.*, 361 F. Supp. 3d 539, 549 (D. Md. 2019). "If the court does not hold an evidentiary hearing, 'the plaintiff need only make a prima facie showing that venue is proper.'" *Id.* (quoting *CareFirst, Inc. v. Taylor*, 235 F. Supp. 3d 724, 732 (D. Md. 2017)). If the Court determines an action has not been filed in the proper district, the Court has discretion to dismiss the complaint or transfer it to a district where venue is proper. *See* 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."); *see also*

*Symbology Innovations, LLC v. Lego Sys., Inc.*, 282 F. Supp. 3d 916, 935 (E.D. Va. 2017); *Colony Ins. Co. v. Progressive Cas. Ins. Co.*, 531 F. Supp. 3d 1102, 1107 (E.D. Va. 2021).

### 3.    Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

### B.    Analysis

#### 1.    Count One Is Deemed Abandoned and Dismissed Under Rule 12(b)(1).

In count one, Plaintiffs bring an APA challenge under § 706(2)(A) and (D) to "Defendants' DS-5535 [s]cheme," through which consular officers request information using the DS-5535 form only after an immigrant visa interview (not at or before the interview), and assert that this scheme

"is not lawful." ECF 5, at 36–37 ¶¶ 189–94; *see also id.* at 6 ¶¶ 4–5. Plaintiffs allege that "[t]he action of preventing Iranian [immigrant visa] applicants from furnishing DS-5535 responses prior to their interviews, is arbitrary and capricious." *Id.* at 36 ¶ 194.

While Plaintiffs argue they have standing to bring their unlawful withholding and unreasonable delay claims and that their injuries are "traceable to Defendants" generally, *see* ECF 17, at 11–13, they do not respond to Defendants' assertion of lack of standing as to the first count. Specifically, Plaintiffs do not respond to the arguments that "Plaintiffs' asserted injury is not traceable to DS-5535 collection" and "the relief Plaintiffs seek for the DS-5535 claim—an order declaring unlawful the collection of the DS-5535 after rather than before the consular interview— would not redress their asserted injury—delay due to post-refusal administrative processing." ECF 9, at 9; *see also* ECF 17, at 12–13 (Plaintiffs summarizing their own argument by explaining that "Plaintiffs have a procedural injury which is ongoing and arises from the Defendants' withholding, unreasonable delay, and failure to adjudicate Plaintiffs' applications, which gives them standing" and omitting any link between the timing of the DS-5535 and Plaintiffs' injuries). Because Plaintiffs have not responded to the arguments that they have failed to tie their injuries to the allegedly unlawful timing of the DS-5535 and that the relief requested would redress their injuries, they have abandoned any assertion of standing (traceability and redressability) as to count one. *See Wal-Mart Real Est. Bus. Tr. v. Garrison Realty Invs., LLC*, 657 F. Supp. 3d 757, 767 (D. Md. 2023) (determining that "a party's failure to respond to an argument ordinarily constitutes a waiver of that issue" in the context of a motion to dismiss); *Sewell v. Strayer Univ.*, 956 F. Supp. 2d 658, 674 (D. Md. 2013) (finding that a plaintiff had "abandoned" a claim where they failed to respond to defendant's argument made in a motion to dismiss).

Indeed, another court evaluating the same claim brought by the same Plaintiffs' counsel recently issued a similar ruling:

> Assuming *arguendo* that Plaintiffs adequately alleged traceability, Plaintiffs have failed to address Defendants' argument regarding redressability, including by explaining their theory of redressability, citing any law relevant to the element of redressability, or identifying any allegations in the Complaint which demonstrate that declaring the alleged schemes to be unlawful would redress the delay on Plaintiffs' visa applications.

*Mahonak v. Rubio*, No. 8:24-CV-01443-FWS-DFM, 2025 WL 449044, at *6 (C.D. Cal. Feb. 10, 2025). This Court therefore finds that Plaintiffs have abandoned their assertion of standing as to count one, and as such, this claim will be dismissed.

Even if Plaintiffs had addressed this argument and persuaded the Court that their injury is traceable to the timing of the DS-5535 implementation and that a declaration that the scheme is unlawful would redress Plaintiffs' injuries, the Court notes that other courts evaluating this same claim have found that it fails under Rule 12(b)(6) as the timing of the DS-5535's issuance is not justiciable.[12] The APA does not apply where "statutes preclude judicial review" or where "agency action is committed to agency discretion by law." *See* 5 U.S.C. § 701(a). As the D.C. Circuit has explained:

> Although there is a strong presumption of reviewability under the APA, *Abbott Labs. v. Gardner,* 387 U.S. 136, 140 (1967), agency action is deemed to be committed to agency discretion when "statutes are drawn in such broad terms that in a given case there is no law to apply," *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 410 (1971) (internal quotations omitted), or there is "no

---

[12] The Court notes that Plaintiffs appear to have failed to respond to Defendants' Rule 12(b)(6) argument as well. *See* ECF 17, at 24 (only mentioning the "justiciab[ility]" of Plaintiffs' claims in the context of asserting that "the Court must consider Plaintiffs allegations which are directly tethered to causes of action three through six"). While Plaintiffs argue that their "APA claim is [justiciable]," *id.* at 21, five of Plaintiffs' six counts are brought under the APA, and the Court reads Plaintiffs' argument on this point as focusing on their unlawful withholding and unreasonable delay claims, not the claim challenging the timing of the DS-5535, *see id.* at 22 ("Defendants are obligated under the APA to carry out their duties, including adjudication of properly filed visa applications, within a reasonable time.").

> meaningful standard against which to judge the agency's exercise of discretion," *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). As the Supreme Court has stated, "if no judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate agency action." *Id.*

*Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State, Bureau of Consular Affs.*, 104 F.3d 1349, 1353 (D.C. Cir. 1997) ("*LAVAS*"); *see also Inova Alexandria Hosp. v. Shalala*, 244 F.3d 342, 346 (4th Cir. 2001) ("[J]udicial review is foreclosed if the 'agency action of which plaintiff complains fails to raise a legal issue which can be reviewed by the court by reference to statutory standards and legislative intent.'" (quoting *Strickland v. Morton*, 519 F.2d 467, 470 (9th Cir. 1975)); *Pharm. Coal. for Patient Access v. United States*, 126 F.4th 947, 964 (4th Cir. 2025) ("Agency action is committed to the agency's discretion when no judicially manageable standards are available to assess how and when an agency should exercise its discretion such that a court would have 'no law to apply.'" (quoting *Heckler*, 470 U.S. at 830–31)).

In evaluating the same claim brought by the same Plaintiffs' counsel, the District Court for the District of Columbia found:

> [T]he relevant statutory provision, 8 U.S.C. § 1202, grants the agency broad discretion for determining the "form and manner" of visa applications. *Id.* § 1202(a). When considering this very provision, the D.C. Circuit concluded that "the broad language of the statute suggests that the State Department policy is unreviewable." [*LAVAS*, 104 F.3d at 1353]. Although the *LAVAS* court addressed a different portion of the statutory language, its conclusion applies with equal weight to this provision.

*Dalmar v. Blinken*, No. 23-CV-3315 (DLF), 2024 WL 3967289, at *7 (D.D.C. Aug. 26, 2024). Though the District Court for the District of Columbia issued its opinion months before Plaintiffs' counsel raised an identical claim in the amended complaint here, the opposition does not contend with or attempt to distinguish the conclusion reached in *Dalmar*. Other courts have also dismissed this type of claim, again finding the challenge to the DS-5535 scheme nonjusticiable under the

11

APA. *See id.* at *7 ("The procedure for adjudicating visa applications—namely the submission of DS-5535 following consular interviews—is thus nonreviewable."); *Pars Equal. Ctr. v. Blinken*, No. 24-CV-00001-SI, 2024 WL 4700636, at *6 (N.D. Cal. Nov. 5, 2024) (dismissing challenge to DS-5535 scheme under Rule 12(b)(6) finding "no judicially manageable standards are available for judging how and when [the] agency should exercise its discretion regarding when to collect the DS-5535" (internal citation and quotation marks omitted)); *Taherian v. Blinken*, No. SACV 23-01927-CJC (ADSX), 2024 WL 1652625, at *6 (C.D. Cal. Jan. 16, 2024) ("[T]he Court will dismiss Count One of Plaintiffs' Complaint [a DS-5535 scheme challenge] as challenging discretionary agency action that is not judicially reviewable."); *Badvipour v. Blinken*, No. 8:24-CV-01458-DOC-KES, 2025 WL 855753, at *8 (C.D. Cal. Jan. 7, 2025) ("Like the court in *Taherian*, the Court agrees that final decisions have not yet been made, thus the timing and manner of visa application review remain within the agency's discretion. Therefore, these claims are non-justiciable." (citation omitted)); *Ariani v. Blinken*, Case No. 2:24-cv-04536-FWS-DFM, ECF 49 (C.D. Cal. Dec. 26, 2024) (attached to Defendants' reply as Exhibit A at ECF 21-1), at *10–18 (denying dismissal of the DS-5535 claim based on lack of standing but granting dismissal under Rule 12(b)(6) and finding the scheme unreviewable).[13]

For these reasons, count one is dismissed.[14]

---

[13] The *Ariani* page citations refer to the order's page numbers printed on the original document at the bottom of each page.

[14] Because the dismissal is for lack of subject matter jurisdiction, dismissal is without prejudice. *See S. Walk at Broadlands Homeowner's Ass'n, Inc., v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013).

2.    Count Two is Dismissed Under Rule 12(b)(6).

In count two, Plaintiffs bring a suit under 5 U.S.C. § 706(2)(A) and (D) challenging "Defendants' decision to use § 221(g) to throttle legal immigration." ECF 5, at 37.    Plaintiffs allege that Defendants "have made a decision to use non-final § 221(g) decisions to satisfy their duties to provide final adjudications, and thus throttle legal immigration," in violation of 8 U.S.C. § 1182(g) —§ 221(g) of the INA—because this "statute does not allow this discretion to refuse [immigrant visa] applications based upon information that was not requested prior to the interview." *Id.* ¶ 196. Defendants argue that this count should be dismissed under Rule 12(b)(6) because "Plaintiffs allege no facts supporting their conclusory claim that Defendants 'have made a decision' to use visa refusals under INA § 221(g) to 'throttle legal immigration.'" ECF 9, at 19 (quoting ECF 5, at 5 ¶ 1, at 37 ¶¶ 195–97). Defendants further advance that dismissal is warranted because Plaintiffs have not alleged a final agency action, "a prerequisite to bringing an APA challenge under 5 U.S.C. § 706(2)." *Id.* at 20 (citing *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)).

Plaintiffs do not respond to this argument in opposition, and thus, as with count one, have abandoned this claim. *See Wal-Mart Real Est. Bus. Tr.*, 657 F. Supp. 3d at 767; *Sewell*, 956 F. Supp. 2d at 674. Indeed, other courts evaluating the same claim have found the same. *Mahonak*, 2025 WL 449044, at *8 ("The court finds Plaintiffs have abandoned their second claim by failing to address Defendants' arguments regarding the sufficiency of this claim."); *Ariani*, Case No. 2:24-cv-04536-FWS-DFM, ECF 49, at *18–19 (finding that Plaintiffs "abandoned their second claim by failing to address Defendants' arguments regarding the sufficiency of this claim"). This claim is dismissed with prejudice.

3.   The Court Has Subject Matter Jurisdiction to Hear Counts Three Through Six, the Unlawful Withholding and Unreasonable Delay Claims.

The Court first notes that the unlawful withholding and unreasonable delay claims brought under the APA and the mandamus claim are subject to identical analysis. *See Kangarloo v. Pompeo*, 480 F. Supp. 3d 134, 142 (D.D.C. Aug. 7, 2020) ("The standard for undue delay under the Mandamus Act, however, is identical to the APA standard." (citing *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63–64 (2004))).

The Court previously rejected Defendants' jurisdictional arguments on the unlawful withholding and unreasonable delay claims at the preliminary injunction hearing and will not repeat the entire analysis here. In sum, the Court finds that Defendants have an unfulfilled mandatory, nondiscretionary duty owed to Plaintiffs and the § 221(g) refusals do not satisfy the consular officers' duties under 22 C.F.R. § 42.81(a) when Plaintiffs remain in indefinite administrative processing awaiting a subsequent decision. *See Parva v. Blinken*, Civ. No. TDC-23-3287, 2024 WL 4042466 (D. Md. Sept. 4, 2024); *Mehneh v. Blinken*, No. 24-CV-1374-ZMF, 2024 WL 5116521, at *5 (D.D.C. Dec. 16, 2024); *Iqbal v. Blinken*, No. 2:23-CV-01299-KJM-CSK, 2024 WL 3904959, at *5 (E.D. Cal. Aug. 22, 2024). The Court also declines to dismiss these claims on the grounds that Plaintiffs named the wrong defendants. *See Janay v. Blinken*, 743 F. Supp. 3d 96, 110 (D.D.C. 2024). For these reasons, and for the reasons stated more fulsomely at the preliminary injunction hearing, the Court finds that it has subject matter jurisdiction over the unlawful withholding and unreasonable delay claims and declines to dismiss counts three through six under Rule 12(b)(1).

4.   Consular Nonreviewability Does Not Preclude This Court's Review.

Defendants argue that the unlawful withholding and unreasonable delay claims should be dismissed under Rule 12(b)(6) because "the consular nonreviewability doctrine precludes the

14

Court from reviewing the consular officers' decisions to refuse Plaintiffs' visa applications." ECF 9, at 30. Like Defendants' subject matter jurisdiction argument, the Court rejected this argument at the preliminary injunction hearing. The Court again finds that the doctrine of consular nonreviewability does not preclude judicial review and does not warrant dismissal of the withholding and delay claims under Rule 12(b)(6). *See Jahangiri v. Blinken*, Civ. No. DKC 23-2722, 2024 WL 1656269, at *6 (D. Md. Apr. 17, 2024) ("A majority of courts, however, have held that the doctrine of consular nonreviewability does not bar claims to compel adjudication of a visa petition undergoing administrative processing.") (collecting cases). Counts three through six will not be dismissed on this basis.[15]

     5.    The Court Will Not Dismiss This Action Under Rule 12(b)(3) for Improper Venue and Declines to Sever the Claims.

Defendants further argue that dismissal is warranted under Rule 12(b)(3) because Plaintiffs have not brought suit in the proper venue and the six remaining Plaintiffs have been improperly joined to this action. *See* ECF 9, at 20–26. In arguing that venue is improper, Defendants rely primarily on *Abissi v. United States Citizenship & Immigration Services*, where the Court transferred an action brought by seven plaintiffs, concluding that venue was not proper in the District of Maryland for five of them. 729 F. Supp. 3d 505, 510 (D. Md. 2024). That case, however, concerned Freedom of Information Act ("FOIA") requests brought against the United States Citizenship and Immigration Services ("USCIS"). *Id.* at 507. Critically, "[t]he general

---

[15] Defendants assert that where, as here, a plaintiff alleges the "delayed adjudication of visa applications, Defendants typically seek dismissal, among others, on the basis of whether the alleged delay is unreasonable as a matter of law" in conjunction with their request to sever Plaintiffs' claims. ECF 9, at 26. However, Defendants do not actually move to dismiss Plaintiffs' unreasonable delay claims on that basis here. *See id.* ("[I]t is simply not practicable for Defendants—or the Court—to assess the plausibility of the eight individual delay claims in a single action.").

federal venue provision, 28 U.S.C. § 1391, does not apply to FOIA actions[,]" which find their own venue statute in 5 U.S.C. § 552(a)(4)(B). *Id.* at 508. "This venue framework reflects Congress's intention to make the District of Columbia 'an all-purpose forum in FOIA cases,' allowing the District of Columbia courts to develop special expertise in the subject and offering enhanced convenience for governmental defendants." *Id.* at 508 (quoting *In re Scott*, 709 F.2d 717, 720 (D.C. Cir. 1983)). As such, the Court finds *Abissi* of limited utility in evaluating venue here under § 1391.

Plaintiffs allege that venue is proper under 28 U.S.C. § 1391(e). ECF 5, at 9–10 ¶¶ 21–22. As Defendants are officers of the United States, venue is proper where:

(A) a defendant in the action resides,

(B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or

(C) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e) (formatting added). "Additional persons may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure and with such other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies were not a party." *Id.*

Here, there is no dispute that when the amended complaint was filed, Plaintiff Teymournejad was a resident of Maryland, making venue proper at least as to his claims. His claims have been voluntarily dismissed, and all remaining Plaintiffs reside abroad. Importantly, however, "[c]ircumstances of . . . venue are reviewed as of the time an action is commenced, and events occurring subsequently will not generally oust the court of that jurisdiction once attached." *Prestige Wine & Spirits, Inc. v. Jules Robin, S.A.*, 686 F. Supp. 103, 107 (D. Md. 1988) (Niemeyer, J.); *see also Keitt v. New York City*, 882 F. Supp. 2d 412, 459 n.44 (S.D.N.Y. 2011) ("Venue is

determined based upon the parties and allegations at the time the operative complaint is filed, not subsequent events." (citing 28 U.S.C. § 1391(b); *Greene v. Sha–Na–Na*, 637 F. Supp. 591, 600 (D. Conn. 1986))).

"For purposes of § 1391(e)(1)(C), venue is proper in a multi-plaintiff case if <u>any</u> plaintiff resides in the district." *S.C. Coastal Conservation League v. Pruitt*, No. 18-CV-330-DCN, 2018 WL 2184395, at *5 (D.S.C. May 11, 2018) (emphasis in original) (citing *Exxon Corp. v. Fed. Trade Commission*, 588 F.2d 895 (3rd Cir. 1978)); *see also Sakthivel v. Cuccinelli*, No. 3:18-CV-03194-CMC, 2020 WL 1698019, at *4 (D.S.C. Apr. 7, 2020) ("Plaintiffs argue and the Government does not dispute that the majority interpretation of 28 U.S.C. § 1391(e)(1)(C) allows venue in a multi-plaintiff case against the Government (where no real property is involved) to be founded on the residency of one plaintiff."), *aff'd sub nom. Sakthivel v. Jaddou*, No. 21-1207, 2023 WL 2888565 (4th Cir. Apr. 11, 2023). Thus, venue was proper in this District when Plaintiffs filed the amended complaint, and dismissal under Rule 12(b)(3) or § 1406 is not warranted.[16] The Court turns now to the question of joinder and severance.[17]

Defendants argue that Plaintiffs are not properly joined so the Court should sever their claims. *See* ECF 9, at 23–26. The Court "has broad discretion in deciding whether to grant

---

[16] While Defendants assert that dismissal, rather than transfer, is the proper remedy here to cure the asserted improper venue, Defendants do not otherwise seek transfer under 28 U.S.C. § 1404, which governs when venue is proper in the transferor district. *See* ECF 9, at 22 ("Dismissal, not transfer, is warranted." (citing only 28 U.S.C. § 1406)).

[17] The Court recognizes that Plaintiffs' counsel has filed numerous lawsuits nearly identical to this one involving at least one "policy" claim brought by all plaintiffs as well as unreasonable delay claims brought by each plaintiff. *See* ECF 9, at 25 (collecting cases). In some of those cases, the plaintiffs then promptly abandoned prosecution of the policy claim or claims. *See, e.g., Mahonak*, 2025 WL 449044, at *8. Repeatedly bringing the same claim—a claim which has uniformly been rejected by courts or is swiftly abandoned—for the purpose of using it as a jurisdictional hook on which to hang the otherwise unrelated claims of others may reflect a pattern of forum shopping, however that question is not before this Court here.

severance." *Equal Rts. Ctr. v. Equity Residential*, 483 F. Supp. 2d 482, 489 (D. Md. 2007) (citation omitted). "Rule 20 gives courts wide discretion concerning the permissive joinder of parties, and 'should be construed in light of its purpose, which is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits.'" *Aleman v. Chugach Support Servs., Inc.*, 485 F.3d 206, 218 (4th Cir. 2007) (internal quotation marks omitted) (quoting *Saval v. BL, Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983)). Under the rule, plaintiffs "may join in one action" if two prongs are satisfied: (1) the plaintiffs "assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and (2) "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). Courts typically evaluate whether claims arise out of the same transaction or occurrence "on a case by case basis." *Saval*, 710 F.2d at 1031. "The 'transaction or occurrence test' of the rule 'would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary.'" *Id.* (citing *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974)); *see also Moore v. New York Cotton Exch.*, 270 U.S. 593, 610 (1926) ("'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship."). The common question of law or fact prong is similarly flexible: Rule 20(a) "does not require that every question of law or fact in the action be common among the parties; rather, the rule permits party joinder whenever there will be *at least one* common question of law *or* fact." *Stephens v. Kaiser Found. Health Plan of the Mid-Atl. States, Inc.*, 807 F. Supp. 2d 375, 384 (D. Md. 2011) (citing 7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 1653 (3d ed. 2001)).

While Defendants argue that severance of the withholding and delay claims is appropriate here because "they arise from different factual situations and pose different legal questions" and point the Court to decisions by courts that have done just that, *see* ECF 9, at 24, severance remains in the Court's discretion. Other courts evaluating similar claims have found plaintiffs to be properly joined. *See Mahonak*, 2025 WL 449044, at *11 (finding transaction or occurrence test met and plaintiffs properly joined in case substantially similar to this one because "Plaintiffs applied for the same type of visa application (an EB-2 visa), their applications are at the same stage of the proceedings (administrative processing) and will be evaluated according to the same standards, and the same policies purportedly caused the delay on all of Plaintiffs' applications (namely, Defendants' policies requiring Iranian applicants to submit DS-5535 responses after their interview and mandating non-final refusals pending administrative processing"); *Ayala v. Noem*, --- F. Supp. 3d ---, No. 1:24-CV-00816-MIS-JHR, 2025 WL 1310937, at *11 (D.N.M. May 6, 2025) (finding joinder permissible and declining to sever claims alleging unreasonable delay in adjudicating U visa petitions where plaintiffs' claims "arise from interactions with the same entity, USCIS, under the same statutes and regulations, pursuant to which their petitions are evaluated under the same criteria and policies" and "each Plaintiff's claim involves the common question of law of whether USCIS has unreasonably delayed the processing of U visa petitions in violation of the APA"); *Jamal v. Pompeo*, No. CV196967JVSDFMX, 2019 WL 7865175, at *3 (C.D. Cal. Nov. 19, 2019) (finding permissive joinder appropriate where plaintiffs bringing unreasonable delay claims also alleged that a common pattern or policy caused the delay in adjudication of their visa applications); *Al Daraji v. Monica*, No. CIV. A. 07-1749, 2007 WL 2994608, at *8 (E.D. Pa. Oct. 12, 2007) (denying severance of plaintiffs' unreasonable delay claims against USCIS because "[r]egardless of the differences in plaintiffs' positions with regard to their immigration applications

19

and their various citizenship, the 'series of transactions or occurrences' they uniformly challenge are one: the allegedly delayed actions of USCIS in adjudicating their applications due to the newly-required FBI name checks"); *Anfaneh v. United States Dep't of Homeland Sec.*, No. 3:07-CV-0042-N, 2007 WL 9717314, at *2 (N.D. Tex. Nov. 7, 2007) (declining to sever claims alleging unreasonable delay in naturalization application adjudications); *Altowaiti v. Cissna*, No. 18-CV-508 (KBF), 2018 WL 11446810, at *3 (S.D.N.Y. June 11, 2018) (denying severance at motion to dismiss stage because "[a]common question of law exists here—namely, whether the USCIS policy on Yemeni I-130 petitions is unfairly discriminatory and designed to unreasonably delay their processing"). *But see Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) (affirming district court's severance of unreasonably delay claims brought by 49 plaintiffs and noting that "the mere allegation of general delay is not enough to create a common transaction or occurrence").[18]

---

[18] The Eastern District of Pennsylvania distinguished *Coughlin*:

> First, *Coughlin* involved 49 plaintiffs, some of whom were subject to immigration review and some of whom filed suit on behalf of an alien spouse, child, or worker. *Id.* at 1349-50. The instant case involves merely five (5) plaintiffs, all of whom have already applied for naturalization or adjustment of status, and who bring this suit solely on their own behalf. Second, the plaintiffs in *Coughlin* did not allege a "pattern or policy of delay" in dealing with all applications and/or petitions by the INS [now USCIS]." *Id.* at 1350. The Ninth Circuit stated, in *dicta,* that if the plaintiffs had alleged that the delay in adjudicating their petitions was the result of a "pattern or policy," then their claims would "arise out of a systematic pattern of events and, therefore, arise from the same transaction or occurrence." *Id.* In the instant case, plaintiffs have alleged injury due to a policy or practice of delay on USCIS's part.

*Al Daraji*, 2007 WL 2994608, at *9. The Court agrees with the analysis of the *Al Daraji* court. Further, the *Coughlin* court upheld a decision squarely within the district court's discretion. *Coughlin*, 130 F.3d at 1351–52 ("[T]he district court's [severance] order was not an abuse of discretion[.]").

Here, each Plaintiff here is an Iranian national whose EB2-NIW visa applications are stuck in administrative processing after an interview with a consular officer. Plaintiffs have alleged, albeit unsuccessfully, that common policies contributed to the delay. *See* ECF 5, at 36–37 ¶¶ 189–97 (counts one and two). While those claims have now been dismissed and the factual circumstances of each Plaintiff's unlawful withholding and unreasonable delay claims may differ, at this stage, the Court finds that a common question of law still exists as to the remaining claims and that evaluating the remaining six Plaintiffs' claims together will expedite a final determination and promote trial convenience. After all, "[n]either a plaintiff nor a defendant need be interested in obtaining or defending against all the relief demanded." Fed. R. Civ. P. 20(a)(3). Should it become clear at a later stage that joinder no longer serves the goals of efficiency and convenience (and that severance would aid them), the Court may revisit the question. For now, Defendants have not described how joinder of Plaintiffs' claims here burdens them, except in conclusory terms. *See* ECF 9, at 25 ("Filing group lawsuits in this fashion also imposes an undue burden on Defendants, who must track and assess the status of each individual visa applicant and the status of their claims in one lawsuit."), at 26 ("It is simply not practicable for Defendants—or the Court— to assess the plausibility of the eight individual delay claims in a single action."). The request to sever is therefore denied.

## III.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. Counts one and two are dismissed. The Court declines to sever the six remaining Plaintiffs' claims. A separate implementing Order will issue.

Dated: July 21, 2025

_____/s/_____

Brendan A. Hurson
United States District Judge

21